Dear Mr. Laborde:
You advise this office that you currently serve in the elected office of police juror for Avoyelles Parish. You ask if the law permits you to continue to serve as police juror, while accepting full-time employment as Director of Information Systems with the Paragon Casino, a land-based casino located and operating in the City of Marksville, Avoyelles Parish.
The Louisiana Economic Development and Gaming Corporation Law, La.R.S. 27:201, et seq., is applicable to land-based casino gaming activities. La.R.S. 27:261(A) prohibits an elected police juror from holding employment with a casino gaming operator:
 A. No public officer as defined in R.S. 42:1 shall engage in any business activity with a casino gaming operator except as a patron or as a performing professional musician in the official gaming establishment or other premises where authorized gaming activities are conducted . . .
Under La.R.S. 27:261(A), no "public official" shall engage in a business activity with a "casino gaming operator" unless the public official is performing as a professional musician in compliance with the requirements of La.R.S. 27:261 (A).
La.R.S. 27:205(5) defines "casino gaming operator" as:
 (5) "Casino gaming operator" or "casino operator" means any person who enters into a casino operating contract with the corporation requiring that person to conduct casino gaming operations according to the provisions of this Chapter. *Page 2 
La.R.S. 42:1 defines "public officer" as any person holding a public office in this state:
 As used in this title, the term "public office" means any state, district, parish or municipal office, elective or appointive, or any position as member on a board or commission, elective or appointive, when the office or position is established by the constitution or laws of this state.
A police juror is elected pursuant to La.R.S. 33:1221 providing ". . . police jurors shall be elected at the state general election and shall serve for terms of four years . . ." Because a police juror holds a public office, and because holding employment with a casino gaming operator is a business activity as defined by La.R.S. 27:261, our initial review would indicate your employment with the casino would be prohibited.
However, the Paragon Casino located in the City of Marksville is the property of the Tunica-Biloxi Tribe. The provisions of La.R.S. 27:1, et seq., entitled the "Louisiana Gaming Control Law," do not generally apply to tribal casinos. Rather, Indian gaming is regulated by federal law, 25 U.S.C. 2701 et seq., entitled the "Indian Gaming Regulatory Act." Pursuant to25 U.S.C. 2701(5), Indian tribes have "the exclusive right to regulate gaming activity on Indian lands . . ." Thus, the state does not exercise direct regulatory authority over Indian gaming, except to the extent provided for in the Tribal-State Class III Gaming Compact between the State of Louisiana and the Tunica-Biloxi Tribe.
Of further import is La.R.S. 27:205(6), defining "casino operating contract" to mean "a contract let or bid by the [Louisiana Economic Development and Gaming Corporation] in accordance with the provisions of this Chapter, authorizing a casino operator to conduct casino gaming operations at the official gaming establishment for the benefit of the state and the casino gaming operator." The Tunica-Biloxi Tribe is not required to and has never entered into a "casino operating contract" with the Louisiana Economic Development and Gaming Corporation, or its successor, the Louisiana Gaming Control Board, for its Paragon Casino.[1] Thus, the Tunica-Biloxi Tribe is not a "casino gaming operator" subject to the prohibition contained in La.R.S. 27:261 (A). La.R.S. 27:261 (A), which would otherwise prohibit an elected official from holding employment with a land-based *Page 3 
casino, does not prohibit an elected official from holdingemployment with a tribal casino.
Because the Paragon Casino is a tribal casino, it is the opinion of this office that La.R.S. 27:261 (A) would not prohibit your employment with the Paragon Casino while you continue to serve as police juror. In accord with this conclusion is La. Atty. Gen. Op. 06-0295, copy attached.
It is further the opinion of this office that the prohibitions contained in La.R.S. 42:63 of the Louisiana Dual Officeholding and Dual Employment Law, are inapplicable here. La.R.S. 42:63(A)(1) prohibits a "person holding an elective office . . . in any . . . political subdivision . . ." from holding at the same time ". . . employment in the government of a foreign country, in the government of the United States, or in the government of another state." Here we find it relevant to cite the United State Supreme Court case of Cherokee Nation vs. State ofGeorge, 30 U.S. 1 (1831), in which Chief Justice Marshall stated:
 Though the Indians are acknowledged to have an unquestionable, and, heretofore, unquestioned right to the lands they occupy, until that right shall be extinguished by a voluntary cession to our government; yet it may well be doubted whether those tribes which reside within the acknowledged boundaries of the United States can, with strict accuracy, be denominated foreign nations. They may, more correctly, perhaps, be denominated domestic dependent nations.
They occupy a territory to which we assert a title independent of their will, which must take effect in point of possession when their right of possession ceases. Meanwhile they are in a state of pupilage. Their relation to the United States resembles that of a ward to his guardian.
Under Cherokee Nation, employment with the Tunica-Biloxi tribe is employment with a domestic sovereign, which is not ". . . employment in the government of a foreign country, in the government of the United States, or in the government of another state." Because employment with a tribal casino is not included within the list of employers disallowed by La.R.S. 42:63(A)(1), it is the opinion of this office that the dual officeholding provisions would not prohibit you from holding employment with the Paragon Casino while continuing to serve as police juror for Avoyelles Parish. We also note the provisions of La.R.S. 33:3005, a statute under which the Avoyelles Parish Police Jury receives monies generated from the gaming activities of the TunicaBiloxi Indian Tribe of Louisiana.[2] We express no opinion concerning any potential *Page 4 
conflict of interest occasioned by your employment with the Tunica-Biloxi tribe, while you serve on the Avoyelles Parish Police Jury, a recipient of the monies as provided in La.R.S. 33:3005. We suggest you contact the Louisiana State Board of Ethics for an opinion addressing the application of the Code of Governmental Ethics to your situation. *Page 5 
You may contact the Board at the following address: P.O. Box 4368, Baton Rouge, Louisiana 70821, phone: 225-219-5600.
Finally, please be aware that the opinion of this office regarding the issue of dual officeholding is limited to an examination of the Louisiana Dual Officeholding and Dual Employment Law, La.R.S. 42:61, et seq., and does not reflect an examination of any ordinances of Avoyelles Parish which have not been provided to this office and which might otherwise prohibit a parish official from employment with a gaming establishment.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL Attorney General
 BY: __________________________ KERRY L. KILPATRICK Assistant Attorney General
 KLK:arg
[1] The Louisiana Economic Development and Gaming Corporation was created under the provisions of La.R.S. 27:210, and granted all powers necessary to perform the functions for which it was created, including the power of granting an exclusive contract to operate a casino gambling establishment. Under Act 7 of the 1996 First Extra. Session of the Louisiana Legislature, pursuant to La.R.S. 27:11, 27:15 and 27:31, the legislature formed the Louisiana Gaming Control Board to replace and succeed the Louisiana Economic Development and Gaming Corporation. La.R.S. 27:31 (A)(1) provides the Gaming Control Board is now ". . . the sole and exclusive regulatory and supervisory board for gaming operations and activities authorized by the Louisiana Riverboat Economic Development and Gaming Control Act, the Louisiana Economic Development and Gaming Corporation Act, and the Video Draw Poker Devices Control Law . . ." Thus, the Board statutorily assumed all of the authority that had been granted to its predecessors, and pursuant to La.R.S. 27:31(C), "any reference in . . . any designation by any law or contract or other document of any entity whose functions are transferred to the board shall be deemed to refer to the board . . ."
[2] La.R.S. 33:3005 provides:
Avoyelles Parish Local Government Gaming Mitigation Fund; allocation and use of monies in the fund
A. Beginning October 1, 1995, and each quarter thereafter, as received, the state treasurer shall credit to the Bond Security and Redemption Fund all financial contributions received by the state of Louisiana under the provisions of that compact between the state and the Tunica-Biloxi Indian Tribe of Louisiana entitled, "Tribal-State Compact for the Conduct of Class III Gaming Between the Tunica-Biloxi Indian Tribe of Louisiana and the State of Louisiana", as amended and hereinafter known as the "compact"; and after a sufficient amount is allocated from that fund to pay all the obligations secured by the full faith and credit of the state which become due and payable within any fiscal year, the treasurer shall pay the remainder of such funds into a special fund which is hereby created in the state treasury and designated as the "Avoyelles Parish Local Government Gaming Mitigation Fund", hereinafter referred to as the "fund".
B. The monies in the fund shall be subject to an annual appropriation by the legislature and shall be used solely to offset and defray the expenses of certain political subdivisions within Avoyelles Parish as provided in Subsection C of this Section which result from the conduct of Class III gaming. All unexpended and unencumbered monies in the fund at the end of each fiscal year shall remain in the fund; the treasurer shall invest all monies in the fund in the same manner as the monies in the state general fund and all interest earned shall remain to the credit of the fund.
C. Within ten days of the deposit of the monies into the fund each quarter, the state treasurer shall, in accordance with the provisions of Subsection B of this Section, remit all such monies to the Avoyelles Parish Police Jury. The Avoyelles Parish Police Jury shall, within ten days of the receipt of such monies, distribute all such funds to the governing authority of the political subdivisions of Avoyelles Parish as determined by the Gaming Revenue Distribution Committee created by the parish governing authority.
D. Notwithstanding Subsection C, the funds will be distributed as follows for the first year, beginning October 1, 1995:
(1) Avoyelles Parish Police Jury-twenty-five percent.
(2) Avoyelles Parish Law Enforcement District-thirty percent.
(3) The district attorney for the Twelfth Judicial District-five percent.
(4) Avoyelles Parish School Board-fifteen percent.
(5) The municipalities in Avoyelles Parish-twenty-five percent, to be distributed to the individual municipalities in accordance with a formula developed by the Avoyelles Parish Mayors Association and approved by the police jury.
E. The Gaming Revenue Distribution Committee shall meet annually prior to October first each year to determine the proportion of funds to be distributed to each political subdivision of the parish. The Avoyelles Parish Mayors Association shall develop a formula for the distribution of the revenues allocated for the municipalities in the parish.